FILED
2016 Dec-14  PM 03:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **VALENTINA BALTAZAR,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| **v.** | } | **Case No.:  5:15-cv-02202-MHH** |
| | } | |
| **MARTINEZ ENTERPRISES, LLC,** | } | |
| **d/b/a CASA BLANCA,** | } | |
| | } | |
| **Defendant.** | | |

## MEMORANDUM OPINION

This opinion concerns a proposed FLSA settlement.  In her complaint, plaintiff Valentina Baltazar contends that her former employer, defendant Martinez Enterprises, LLC, d/b/a Casa Blanca, violated the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq.*  (Doc. 1).  The parties have agreed to settle Ms. Baltazar's FLSA claims, and they have asked the Court to approve the proposed settlement.  (Doc. 13).  The Court will approve the FLSA settlement because the settlement is a fair and reasonable compromise of a bona fide dispute.

## I.    BACKGROUND

Ms. Baltazar filed this lawsuit on December 2, 2015.  (Doc. 1).  In her complaint, Ms. Baltazar states that she worked for Casa Blanca as a server from approximately September of 2013 to August of 2015.  (Doc. 1, ¶ 8).  Ms. Baltazar alleges that, in addition to performing the duties of a server, she spent more than 20

per cent of her work hours performing non-serving duties such as cutting chives, wiping down computer screens, restocking server stations, sweeping, mopping, filling condiment dispensers, dismantling and cleaning tea urns, and arranging and cleaning margarita glasses.  (Doc. 1, ¶¶ 16, 19–20).  According to Ms. Baltazar, Casa Blanca paid her the wage of a "tipped employee" for these tasks, in violation of the FLSA.  *See* 29 U.S.C. §§ 203(m), 206(a); (Doc. 1, ¶ 15).[1]  Ms. Baltazar also contends that Casa Blanca violated the FLSA by failing to adequately compensate her for work she performed in excess of forty hours per week.  (Doc. 1, ¶¶23–26).  According to Ms. Baltazar, Casa Blanca "deliberately sought to avoid" its obligations under the FLSA and, therefore, willfully violated the statute.  (Doc. 1, ¶ 42).

Casa Blanca disputes that Ms. Baltazar spent more than 20 per cent of her work hours performing non-serving duties.  (Doc. 13, p. 7).  Casa Blanca argues, rather, that the "side work" Ms. Baltazar performed was merely incidental to her duties as a server, and that Casa Blanca was therefore permitted to pay Ms. Baltazar the wage of a tipped employee for these duties.  (*See* Doc. 13, p. 7); *see*

---

[1] The FLSA provides that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce . . . $7.25 an hour," beginning in July of 2009.  *See* 29 U.S.C. § 206(a).  With respect to employees who receive more than $30 per month in tips—so-called "tipped employees"—the FLSA permits employers to apply a tip credit of up to $5.12 per hour when calculating the employees' wages. 29 U.S.C. § 203(t); *Stubbia v. Nopi Enterprises, Inc.*, 2012 WL 3687491, at *2 (S.D. Fla. Aug. 27, 2012).  Thus, an employer may pay a tipped employee $2.13 per hour without violating the FLSA.

*also Ash v. Sambodromo*, LLC, 676 F. Supp. 2d 1360, 1366 (S.D. Fla. 2009) (explaining that, under the FLSA, an employer may pay a tipped employee $2.13 per hour for duties that produce tips, such as serving, and for duties that are incidental to a tip producing duty, "so long as the incidental duties do not exceed 20 percent of the employee's overall duties") (internal citation and quotation marks omitted).  Casa Blanca acknowledges that it miscalculated Ms. Baltazar's overtime pay, but it contends that the miscalculation was made in good faith.  (Doc. 13, p. 8).

The parties engaged in good faith, arm's length negotiations to resolve this dispute.  (Doc. 13, p. 12).  In exchange for dismissal of this action with prejudice, Casa Blanca agreed to pay Ms. Baltazar a gross sum of $30,000.  (Doc. 13, p. 15). The $30,000 consists of $9,960.96 in overtime wages, $9,960.96 in liquidated damages, and $10, 072.08 in attorneys' fees and costs.  (Doc. 13, pp. 10, 14).  In agreeing to this amount, Ms. Baltazar considered the risk that a factfinder could find (1) that she did not spend more than 20 per cent of her work hours performing non-serving duties and is thus not entitled to back pay for such duties, and (2) that Casa Blanca acted in good faith, thus potentially defeating an award of liquidated damages.  *See Davila v. Menendez*, 717 F.3d 1179, 1185–86 (11th Cir. 2013) (explaining that a district court may choose not to award liquidated damages when a defendant has acted in good faith).  Accordingly, Ms. Baltazar agreed to forgo

potential damages related to the hours she spent performing non-serving duties and accept overtime wages and liquidated damages as full settlement for her claims. (Doc. 13, p. 11).  In addition, Ms. Baltazar has agreed to release all FLSA claims she might have against Casa Blanca through the date of this order, including, specifically, all claims Ms. Baltazar has asserted against Casa Blanca in this lawsuit.  (Doc. 13, p. 13).

On this record, the Court considers the parties' motion to approve the proposed settlement of Ms. Baltazar's FLSA claims.  (Doc. 13).

## II.   DISCUSSION

"Congress enacted the FLSA in 1938 with the goal of 'protect[ing] all covered workers from substandard wages and oppressive working hours.'  In addition to mandating a minimum wage, the FLSA obligates employers to compensate employees for hours in excess of 40 per week at a rate of 1 ½ times the employees' regular wages."  *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2162 (2012) (quoting *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981)); *see also* 29 U.S.C. §§ 202, 206(a), 207(a).  Congress designed the FLSA "to ensure that *each* employee covered by the Act would receive '[a] fair day's pay for a fair day's work' and would be protected from 'the evil of 'overwork' as well as 'underpay.'"  *Barrentine*, 450 U.S. at 739 (emphasis in original).  In doing so, Congress sought to protect "the public's independent

interest in assuring that employees' wages are fair and thus do not endanger 'the national health and well-being.'" *Stalnaker v. Novar Corp.*, 293 F. Supp. 2d 1260, 1264 (M.D. Ala. 2003) (quoting *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 706 (1945)).

If an employee proves that his employer violated the FLSA, then the employer must remit to the employee all unpaid wages or compensation, liquidated damages in an amount equal to the unpaid wages, reasonable attorneys' fees, and costs. 29 U.S.C. § 216(b). "FLSA provisions are mandatory; the 'provisions are not subject to negotiation or bargaining between employer and employee.'" *Silva v. Miller*, 307 Fed. Appx. 349, 351 (11th Cir. 2009) (quoting *Lynn's Food Stores, Inc. v. U.S. ex. Rel. U.S. Dep't of Labor*, 679 F.2d 1350, 1352 (11th Cir. 1982)); *see also Brooklyn*, 324 U.S. at 707. "Any amount due that is not in dispute must be paid unequivocally; employers may not extract valuable concessions in return for payment that is indisputably owed under the FLSA." *Hogan v. Allstate Beverage Co., Inc.*, 821 F. Supp. 2d 1274, 1282 (M.D. Ala. 2011).

Consequently, parties may settle an FLSA claim for unpaid wages only if there is a bona fide dispute relating to a material issue concerning the claim. To compromise a claim for unpaid wages, the parties must "present to the district court a proposed settlement, [and] the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food*, 679 F.2d at

1353; *see also Hogan*, 821 F. Supp. 2d at 1281–82.[2]  "[T]he parties requesting review of an FLSA compromise must provide enough information for the court to examine the bona fides of the dispute."  *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010).  The information that the parties provide also should enable the Court "to ensure that employees have received all uncontested wages due and that they have received a fair deal regarding any additional amount that remains in controversy."  *Hogan*, 821 F. Supp. 2d at 1282.  "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute," then a court may approve a settlement.  *Lynn's Food*, 679 F.2d at 1354; *see also Silva*, 307 Fed. Appx. at 351 (proposed settlement must be fair and reasonable).

―――――――――――――――

[2] In *Lynn's Food*, the Eleventh Circuit Court of Appeals explained:

> [t]here are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees.  First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them.  An employee who accepts such a payment supervised by the Secretary thereby waives his right to bring suit for both the unpaid wages and for liquidated damages, provided the employer pays in full the back wages.  The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.

679 F.2d at 1352–53 (footnotes omitted).  The Eleventh Circuit reiterated the import of *Lynn's Food* in *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304 (11th Cir. 2013).

Based on the Court's review of the information that the parties submitted regarding the terms of the proposed settlement agreement, the Court finds that there is a bona fide dispute between the parties, and the settlement terms that the parties have negotiated are fair and reasonable. (*See* Doc. 13). The parties agreed to settle Ms. Baltazar's claims in exchange for an amount that represents a substantial percentage of Ms. Baltazar's maximum potential recovery and was calculated according to a method proposed by Ms. Baltazar. (*See* Doc. 13, p. 12). Ms. Baltazar appreciated the risks and costs associated with litigating her claims and determined that the proposed settlement amount represented a just compromise. (Doc. 13, p. 11). The Court finds that the settlement amount is fair and reasonable under the circumstances of this case.

The Court also approves the negotiated attorneys' fee amount of $10,072.08. (Doc. 13, p. 14). The "FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva*, 307 Fed. Appx. at 351 (citing *Lynn's Food*, 679 F.2d at 1352); *see also Briggins v. Elwood TRI, Inc.*, 3 F. Supp. 3d 1277, 1291 (N.D. Ala. 2014) (noting that even where payment of attorneys' fees does not reduce the compensation negotiated for and payable to an FLSA plaintiff, "the court is required to review for fairness and approve the fee and expenses proposed to be

paid by the defendants in the settlement") (citing *Silva*, 307 Fed. Appx. at 349). Based upon the information that the parties submitted to the Court, the Court finds that the fee amount included in the settlement agreement adequately compensates counsel for the time invested in the action.  In addition, the negotiated fee does not appear to compromise Ms. Baltazar's recovery.  Rather, the fee is "separate and distinct from the settlement agreement."  *Briggins*, 3 F. Supp. 3d at 1291.  The Court finds the fee to be fair and reasonable.

## III.   CONCLUSION

For the reasons stated above, the Court approves the parties' proposed settlement of Ms. Baltazar's claims.  The Court concludes that there is a bona fide dispute regarding Ms. Baltazar's FLSA claims, and the terms that the parties have negotiated constitute a fair and reasonable resolution of that dispute.  The Court will enter a separate order dismissing Ms. Baltazar's claims with prejudice and closing the file.

**DONE** and **ORDERED** this December 14, 2016.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE